IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JUSTIN MARSHALL HILLARD, | * |
| Plaintiff, | * |
| vs. | * Civil Action No. ADC-15-1442 |
| CAROLYN W. COLVIN,<br>Acting Commissioner,<br>Social Security Administration, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On May 20, 2015, Justin Marshall Hillard ("Plaintiff") petitioned this court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and each parties cross-motions for summary judgment (ECF Nos. 17, 20, 21), the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). In addition, for the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 20) is GRANTED, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, and the decision of the Social Security Administration is AFFIRMED.

### CASE BACKGROUND

On August 30, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. On August 31, 2011, Plaintiff additionally filed a Title XVI application for supplemental security income. In both claims, Plaintiff alleged disability beginning on November 17, 2010. Both claims were denied initially and upon reconsideration on

November 10, 2011 and May 4, 2012, respectively. Subsequently, on June 21, 2012, Plaintiff filed a written request for a hearing. On April 14, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). Following that hearing, the ALJ determined that Plaintiff was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act for the timeframe in question. Thereafter, Plaintiff requested review of the decision on May 29, 2014 and, on February 24, 2015 the Appeals Council affirmed the ALJ's decision. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On May 20, 2015, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's final decision.[1] On October 23, 2015, Plaintiff filed a Motion for Summary Judgment. On February 24, 2016, Defendant filed a Motion for Summary Judgment. On March 18, 2016, Plaintiff filed a Response to Defendant's Motions for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement as well as Defendant's Motion for Summary Judgment and Plaintiff's Response to such.

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that he is under disability within the meaning of the Social Security Act. The term "disability," for purposes of the Social Security Act, is defined as the "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A

---

[1] On May 2, 2016, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such a severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that, "[i]f at any step a finding of disability or non-disability can be made, the [Commissioner] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the Commissioner considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

At step three, the Commissioner considers the medical severity of the impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the Code of Federal Regulations, then the claimant

3

is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

At step four, the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

At steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Radford*, 734 F.3d at 291. At step five, the burden shifts to the Commissioner to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012); *See also Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

Following the five-step evaluation process, the ALJ found that Plaintiff suffered from the severe impairments of Obsessive Compulsive Disorder ("OCD") and anxiety disorder. *See* ECF No. 11 at 25. Despite those impairments, the ALJ determined that Plaintiff retained the residual

functional capacity to "perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant can only perform simple, repetitive, nonproduction work without frequent interaction with coworkers or the public." *Id.* at 26. After consideration of the testimony from the vocational expert ("VE"), the ALJ further determined that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," *Id.* at 29, and concluded that, "[a] finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines." *Id.* at 30.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). However, the Court does not conduct a de novo review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence."). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)

("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.").

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see Hancock*, 667 F.3d at 472. It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653 (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted).

### PLAINTIFF'S ARGUMENTS RAISED

In the present case, Plaintiff contends that the ALJ did not use the correct legal standard in deciding his case and that the ALJ's denial of disability benefits was not supported by substantial evidence. Plaintiff raises three arguments in support of that contention: (1) that the ALJ failed to comply with the requirements as set out in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); (2) that the ALJ failed to comply with the Treating Physician Rule; and (3) that the ALJ failed to properly evaluate Plaintiff's mental impairments pursuant to the "special technique" set out in 20 C.F.R. §§ 404.1520a and 416.920a. Each of Plaintiff's arguments lacks merit and is addressed below.

## DISCUSSION

### A. The ALJ Properly Evaluated the Severity of Plaintiff's Impairments Pursuant to the "Special Technique" Set Forth in 20 C.F.R. §§ 404.1520a and 416.920a.

When an ALJ determines that a claimant has a medically determinable mental impairment or impairments, the Regulations require the ALJ to follow a "special technique" to evaluate such impairments, as described in 20 C.F.R. §§ 404.1520a and 416.920a. Under the "special technique", an ALJ is required to rate the degree of a claimant's functional limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ's evaluation must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. § 404.1520a(e)(2). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme, 20 C.F.R. § 404.1520a(c)(4), while the fourth functional area is rated on a four-point scale: none, one or two, three, and four or more. *Id*. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id*.

The ALJ is also required to document, in writing, how the "special technique" was applied in evaluating an individual claimant. *Id.* § 404.1520a(e). Specifically, an ALJ's written decision "must incorporate the pertinent findings and conclusions based on the technique" and "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* § 404.1520a(e)(2).

In the present case, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments because he did not satisfy the criteria of either "paragraph B" or "paragraph C." *See*

ECF No. 11 at 25. To satisfy the "paragraph B" criteria, the claimant must demonstrate that his impairments result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1. To satisfy the "paragraph C" criteria, the claimant is required to prove a chronic affective disorder by showing repeated episodes of decompensation, risk of decompensation upon a minimal increase in mental demands, or an inability to function outside a highly supportive living arrangement.

In this case, the ALJ concluded that Plaintiff's impairments do not satisfy the "paragraph B" criteria because the Plaintiff only had "mild restriction" in daily living; "moderate restriction" in social functioning; "moderate difficulties" in concentration, persistence, or pace; and no episodes of decompensation of an extended duration. ECF No. 11 at 25-26. In addition, with regard to "paragraph C," the ALJ found "no evidence of repeated episodes of decompensation, a residual disease process that results in such marginal adjustment that even a minimal increase in mental demands could cause the individual to decompensate, or of a current history of one or more years' inability to function outside a supportive living arrangement." ECF No. 11 at 26.

Plaintiff asserts that the ALJ's decision is "devoid of reasoning and unsupported by substantial evidence" and argues that there was "ample evidence" to satisfy the "paragraph B" and "paragraph C" criteria. The Court disagrees.

First, with regard to daily living activities, the Plaintiff reported that he was able to maintain basic personal hygiene and toileting, clean his house, prepare simple meals, play video games, watch television, and read. Second, with regard to Plaintiff's social functioning and Plaintiff's concentration, persistence, or pace, Plaintiff testified that he could not leave the house

without having panic attacks and that he did not handle stress and changes in routine well. However, the record also demonstrated that Plaintiff engaged in internet dating, had different girlfriends, planned hunting and shopping trips with friends, and went surfing at the beach. Third, Plaintiff provided no evidence of "repeated episodes of decompensation, each of extended duration" 20 C.F.R. 404, Subpt. P, App. 1 § 12.00C(4). Plaintiff's testimony that he was hospitalized for 2-3 days after a suicide attempt in October of 2012 and Dr. Apron's November 2012 notes reflecting Plaintiff's suicidal ideation following his overdose do not meet the definition of "repeated episodes of decompensation, each of extended duration" as outlined in the Regulations. Id. ("three episodes within one year, or an average of once every 4 months, each lasting for at least 2 weeks,").

Additionally, although Plaintiff relied on his mother for financial and living arrangements, his ability to otherwise function outside of a highly supportive living arrangement was supported by substantial evidence. Plaintiff personally cared for himself, had girlfriends, socialized with others, travelled, worked on a farm, attended appointments, drove in cars, and could go out alone if necessary. See Davis v. Colvin, No. 5:13-cv-98, 2015 WL 404213, at *9 (W.D.N.C. Jan. 29, 2015) ("living with parents does not amount to a "highly supportive living arrangement" when a claimant takes care of almost all of his personal needs and makes substantial contributions to the household without a high degree of supervision." (internal quotations omitted)).

Furthermore, the ALJ's conclusion was supported by the Disability Determination Services ("DDS") psychological consultant who also determined that Plaintiff's impairments resulted in less than marked functional limitations under "paragraph B." Therefore, the Court finds no evidence in the record that the ALJ's evaluation of the severity Plaintiff's impairments

was improper or that claimant met the criteria for "paragraph B" or "paragraph C". Accordingly, the Court finds that there was substantial evidence to support ALJ's determinations as to the severity of Plaintiff's impairments.

### B. The ALJ properly weighed the testimony of Plaintiff's treating physician in making his decision.

Plaintiff argues that the ALJ failed to appropriately consider the Psychiatric Review Technique completed by Dr. Dia Apron, Plaintiff's treating physician. See ECF No. 11 at 345-357. Specifically, Plaintiff argues that the ALJ should have given more weight to Dr. Apron's determinations that Plaintiff had marked and extreme functional limitations and had experienced three episodes of decompensation. *Id.* at 355-56.

Under the treating physician rule, an ALJ must generally give more weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2).3 However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, however, it should be afforded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (superseded by statute on other grounds). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) length and frequency of treatment relationship; (2) nature and extent of treatment; (3) supportability, consistency, specialization, and (4) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1-6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, 2011 WL 3273060, at *6 (D. Md. July 27, 2011).

Following a review of Dr. Apron's records with regard to Plaintiff, the ALJ found that "[Dr. Apron's] progress notes do not support a finding that the claimant [is] disabled." ECF No. 11 at 27. The ALJ fully articulated his reasoning for disagreeing with Dr. Apron's conclusions, stating that:

> Although with progress notes showing improvement in symptoms with medication, and compulsive and indiscriminate lying, Dr. Apron prepared a statement finding the claimant with marked and extreme limitations in activities of daily living, social functioning and concentration, persistence and pace. The limitations are neither fully supported nor explained. Dr. Apron's statement was also silent regarding the claimant's marijuana dependence and its effect on his symptoms. The records show that she did advise the claimant not to use drugs with medication. In sum, the findings are not well supported by Dr. Apron's progress notes.

ECF No. 11 at 29.

In support of his statement that Dr. Apron's findings were "not well supported" the ALJ cited repeated examples of claimant's symptoms stabilizing when properly medicated. *See* ECF No. 11 at 27-29. The ALJ also noted that Plaintiff had participated in several relationships and had engaged in travel since the onset of his treatment with Dr. Apron. *Id.* In addition, the ALJ indicated that the progress notes showed a pattern of compulsive and habitual lying by Plaintiff. *See* ECF No. 11 at 28. Consequently, the Court finds that the ALJ's reasoning for giving Dr. Apron's opinion less weight was fully articulated in the ALJ's written decision and was supported by substantial evidence in the record and the ALJ did not err in according less weight to Dr. Apron's conclusion with regard to the severity of Plaintiff's disability.

### C. The ALJ's evaluation was in compliance with the requirements set forth in *Mascio v. Colvin*.

Finally, Plaintiff contends that, under the standard set forth in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the ALJ's assessment of Plaintiff's RFC did not adequately account for his moderate difficulties in concentration, persistence or pace. Plaintiff is incorrect.

The ALJ is solely responsible for determining the residual functional capacity of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96–8p. Completing this assessment requires that the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. See S.S.R. 96–8p. "Only after that may [RFC] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.*

In *Mascio*, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638. As the Fourth Circuit explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In *Mascio*, the Fourth Circuit ultimately remanded the case because it found that moderate limitations in concentration, persistence, and pace are not adequately accounted for in the RFC by only limiting the claimant to "simple, routine tasks or unskilled work." *Id.*

Unlike *Mascio*, the ALJ in the present case did not merely limit Plaintiff to "simple, routine tasks or unskilled work." *Id.* Instead, the ALJ included additional limitations to the Plaintiff's RFC finding that Plaintiff's impairments limited him to "simple, repetitive, **nonproduction work without frequent interaction with coworkers or the public.**" ECF No. 11 at 26 (emphasis added). Contrary to Plaintiff's assertions, the ALJ's finding specifically addressed Plaintiff's ability to stay on task. The ALJ accounted for Plaintiff's limitation in pace by restricting him to "nonproduction work." The ALJ additionally accounted for Plaintiff's

limitation in concentration and persistence by restricting him to work "without frequent interaction with co-workers or the public." ECF No. 11 at 26.

As a result, the Court finds that the ALJ's RFC determination sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence and pace. *See, e.g., Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir.2010) (holding that the ALJ "captured [the claimant's] moderate limitation in concentration, persistence, and pace when he included a restriction of 'no high production goals' "); *Robinson v. Comm'r of Soc.Sec.*, No. 13–cv–13124, 2014 WL 4145339, at *10 (E.D.Mich. Aug.20, 2014) (finding that the ALJ accounted for plaintiff's moderate difficulties with concentration, persistence, or pace by limiting plaintiff's RFC to "simple, routine, and repetitive tasks and free of fast-paced production requirements"); *Schooley v. Astrue*, No. 1:09 CV 2748, 2010 WL 5283293, at *2 (N.D.Ohio Dec.17, 2010) (a hypothetical limiting plaintiff to work not involving "high productions quotas or piece work" was consistent with a moderate limitation in concentration, persistence, or pace).

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, the ALJ's decision shall be affirmed.

Date: 5/26/16

A. David Copperthite
United States Magistrate Judge